**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TOLLIE CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 321 |
| | ) | |
| v. | ) | Honorable Judge Feinerman |
| | ) | |
| CHICAGO STATE UNIVERSITY, | ) | |
| BIJESH TOLIA & FARHAD SIMYAR, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMARY JUDGMENT**

I. **Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see Schuster v. Lucent Technologies, Inc*., 327 F.3d 569, 573 (7th Cir. 2003). A genuine issue of material fact arises only if sufficient evidence favors the nonmoving party such that a jury could return a verdict for that party. *Schuster*, 327 F.3d at 573, *citing, Wade v. Lerner New York, Inc*., 243 F.3d 319, 321 (7th Cir. 2001).

II. **Plaintiff Cannot Establish a Prima Facie Case of FMLA Interference or Retaliation**

The FMLA provides that an employee is entitled to a total of 12 weeks of unpaid leave in a 12-month period because of the employee's own serious health condition or to care for a qualifying family member with a serious health condition. 29 U.S.C. 2612(a)(1)(c). An employer may not "interfere with, restrain, or deny the exercise" of an employee's rights under the FMLA. 29 U.S.C. § 2615(a)(1). Nor may an employer discharge or discriminate against an employee for exercising his or her rights under the FMLA. 29 U.S.C. § 2915(a)(2). In Count I of his Complaint, Plaintiff does not specify whether his claim is brought pursuant to 29 U.S.C. § 2615(a)(1)(interference claim), 29 U.S.C. § 2915(a)(2)(retaliation claim), or both. Regardless, Plaintiff's claim fails under both causes of action.

    A. **Plaintiff Cannot Establish That CSU Interfered With His FMLA Rights**

To establish a claim of FMLA interference, a plaintiff bears the burden of showing that he or she was denied FMLA benefits to which he or she was entitled. *Burnett v. LFW, Inc*., 472 F.3d 471, 477 (7th Cir. 2006). Plaintiff cannot sustain this burden.

1

Construing the Complaint liberally, Plaintiff claims that CSU interfered with his FMLA rights in one way – by improperly eliminating 170 days of his accumulated sick leave.[1] However, this claim is without factual support and contrary to the record evidence. In fact, Plaintiff never accrued 170 compensable sick days. Prior to his FMLA leave, Plaintiff's "compensable" sick day balance was 107.51 days, after his leave it was 107.51 days and to date it is 107.51 days. (Facts ¶¶ 35-37.)

Plaintiff was on FMLA leave for thirty-one days during January, February and March 2008 (approximately eight academic weeks)[2] and CSU deducted thirty-one "non-payable" sick days from Plaintiff's "non-compensable" time. The record evidence is clear that no other sick, vacation or personal days were deducted while Plaintiff was on leave. (Facts ¶¶ 35-37.) This is entirely permissible under the FMLA and does not constitute an adverse employment action. *Sims v. Shultz*, 305 F.supp.2d 838, 844 (N.D. Ill. 2004) (employer may require that an employee use paid sick, personal or annual leave as part of the 12 week FMLA leave). Therefore, Plaintiff has *no* evidence that CSU interfered with his ability to take FMLA leave or denied him any FMLA entitlements, and his FMLA interference claim fails as a matter of law.

**B. Plaintiff Cannot Prove CSU Retaliated Against Him For Taking FMLA Leave**

An FMLA retaliation claim requires proof of discriminatory or retaliatory intent. *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Retaliation may be proven by either the direct or indirect method. *Buie v. Quad Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). To survive summary judgment under the direct method, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) a materially adverse employment action; and (3) a causal

---

[1] Plaintiff does not plead that any specific actions interfered with his rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1). However, one of the general assertions in Count I of the Complaint – that 170 of Plaintiff's sick days were improperly eliminated - could be construed as a claim of interference. For completeness, this claim is analyzed.

[2] Plaintiff requested leave from 1/29/08 through 3/20/08, with the exception of 2/18/08 and 3/17-3/21/2008). (Facts ¶ 33.)

connection between the two. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009).[3]

### 1. **Plaintiff's FMLA Retaliation Claim Fails Under the Direct Method**

Lacking an admission of retaliatory intent, Plaintiff must establish his case under the direct method with circumstantial evidence of retaliation. In an attempt to do so, Plaintiff cites seven allegedly adverse employment actions, which he claims were taken in retaliation for exercising his rights under the FMLA. (Compl. ¶ 21.) However, Plaintiff's retaliation claim fails under the direct method because: (1) many of the alleged retaliatory actions did not constitute materially adverse employment actions,[4] and (2) even if they did, Plaintiff cannot establish the necessary causal connection between his FMLA leave and these actions. Each action is discussed in turn.[5]

<u>Master Course Outlines</u>: Upon his return from FMLA leave, Plaintiff was given a *temporary* assignment of writing course outlines for the remaining four weeks of the semester. CSU felt that returning Plaintiff to the classroom with a short amount of time left in the semester would be disruptive to students. Contrary to Plaintiff's allegations, he was not required to write outlines for all courses within the Accounting curriculum – instead he was required to write outlines for four courses, all of which he previously taught. Plaintiff himself called this a

---

[3] *Leonard v. Uhlich Children's Advantage Network*, 481 F.Supp.2d 931, 940 (N.D. Ill, 2007) (claims of retaliation under the FMLA, Title VII and other discrimination statutes are analyzed in the same manner). Direct proof typically requires an admission by the decision maker that his actions were based on an illicit reason, though such admissions are rarely found. *See Rogers v. City of Chi.*, 320 F.3d 748, 753-54 (7th Cir. 2003). Circumstantial evidence consists of suspicious timing, ambiguous statements and differing treatment of similarly situated employees. *Hemsworth v. Quotesmith Com., Inc.*, 476 F.3d 487, 491 (7th Cir. 2007.

[4] A materially adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudry v. Nucor Steel-Indiana,* 546 F.3d 832, 838 (7th Cir. 2008). Not every annoyance that makes an employee unhappy constitutes an adverse employment action. *Id.*

[5] In Count I Plaintiff claims that CSU retaliated against him by eliminated 170 days of sick leave. However, this claim is completely without merit or factual support. As discussed in Section II(A) *supra*, only thirty-one sick days were deducted from Plaintiff's accrued sick leave – the same number of days that he was on FMLA leave. This does not constitute an adverse employment action. *See Sims*, 305 F.Supp.2d at 844. Because this claim has no basis in fact, it will not be discussed elsewhere in the brief.

"reasonable" assignment. Moreover, the temporary assignment was not given to Plaintiff *in addition* to his other duties, but *in lieu* of performing any other work. While working on this assignment, Plaintiff's title, seniority and salary did not change. (Facts ¶¶ 41-42, 45-47.) Therefore, the temporary assignment given to Plaintiff did not constitute a adverse employment action. *Collins v. Meike*, No. 02-1871, 2002 WL 31769474, at *2 (7th Cir. Dec. 2, 2002) (temporary reassignment to substitute teaching was not an adverse employment action because plaintiff did not suffer a demotion, failure to promote, significant job reassignment or permanent loss of salary or benefits and "not everything that makes an employee unhappy is an actionable adverse action") quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) and citing *Strutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001).

<u>2008 Summer School Assignment</u>: Plaintiff claims that he was assigned one summer school class, instead of two, in retaliation for taking FMLA leave. (Compl. ¶ 21.) Even if Plaintiff could establish that this constituted an adverse action (which he cannot)[6], he cannot demonstrate a causal connection between his Summer 2008 assignment and his FMLA leave because the Summer 2008 assignment was given to him in January 2008, *before* he went on FMLA leave. *Breeden v. Clark Cty. School Dist.*, 532 U.S. 268 (2001) (cannot demonstrate retaliation when the alleged retaliatory action occurred *before* the protected activity).

<u>Chairperson Position</u>: Plaintiff claims that he was not appointed as Chairperson of the Department of Accounting and Finance *because* he took FMLA leave. (Compl. ¶ 21.) However, the record evidence is clear that Plaintiff was not appointed because he did not have a PhD., and that the ultimate decision maker in the matter - President Daniels – strongly encouraged the

---

[6] Plaintiff was not guaranteed the right to teach *any* summer school classes and, per the CSU Faculty contract, faculty members are contractually prohibited from receiving *more* than two summer school course assignments. (Facts) Therefore Plaintiff's assignment of one course (to which he had no "right") instead of two, does not constitute a materially adverse action.

4

appointment of only individuals with PhDs. (Facts ¶¶ 52-53.) To demonstrate causation, Plaintiff must establish more than the fact that he took FMLA leave and an alleged adverse action happened afterward. *Bilow v. Much Shelist Freed Denenber Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second"). Although the decision was made within a few months of Plaintiff's FMLA leave, temporal proximity alone is not sufficient to demonstrate causation or survive summary judgment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). Besides timing, Plaintiff has *no* other evidence that he was denied the Chair position *because* he took FMLA leave. In fact, there is no evidence that Daniels even knew that Plaintiff took FMLA leave, which is fatal to a retaliation claim. *See Derosena v. Gen. Bd. Of Pensions & Health Benefits of the United Methodist Church, Inc.*, 560 F. Supp.2d 652, 670 (N.D. Ill. 2008) (decision maker cannot retaliate against an employee if unaware of the protected activity).

Plaintiff's 2009 Summer School Assignment: CSU did not assign Plaintiff summer school classes for the summer 2009 because he missed the deadline (which was in writing and nearly the same date every year) to submit his request. (Facts ¶ 59.) The denial had nothing to do with his 2008 FMLA leave, and the record is devoid of any evidence connecting these two incidents. To show causation, Plaintiff must establish more than the fact that he took FMLA leave and that an alleged adverse action occurred later in time. *See Bilow,* 277 F.3d at 895. Moreover, Plaintiff's FMLA leave in January 2008 was too remote in time from his 2009 summer school assignment to establish the causal link required for a retaliation claim. *See Franzoni v. Hartmax Corp.,* 300 F.3d 767, 773 (7th Cir. 2002) (six months too long)*; Everroad v. Scott Truck Sys., Inc.* 604 F.3d 471, 481 (a delay of one year too long).

Plaintiff's 2010-11 Summer School Assignment: To the extent Plaintiff can establish that

the assignment of one summer school course instead of two was an adverse action, he cannot show any causal connection between his Summer 2010 and 20111 assignments and his 2008 FMLA leave – events which were separated by more than two and three years. *See Everroad*, 604 F.3d at 481 (delay of one year is too long to establish the causal link required).

    2.  **Plaintiff's FMLA Retaliation Claim Also Fails Under the Indirect Method**

In the absence of direct evidence of FMLA retaliation, Plaintiff can proceed under the indirect method if he can show that after taking FMLA leave he was treated less favorably than other similarly situated employees who did not take FMLA leave. *Buie*, 472 F.3d at 503. Plaintiff cannot satisfy this requirement either. Here, Plaintiff identifies *no* comparators – no similarly situated employees who were treated more favorably than he was.

In contrast, CSU identified other faculty members who did not take FMLA leave and were treated the same as Plaintiff. First, CSU identified other professors who took leaves of absence for even shorter periods of time (including non-FMLA leave) who were also given non-classroom assignments upon their return from leave. (Facts ¶ 44.) Second, CSU identified other professors in the Accounting and Finance Department (none of whom had taken FMLA leave) who were also assigned one (or zero) summer school course during 2008- 2011.[7] In fact, like Plaintiff, the majority of these professors only taught one course. Third, CSU identified another professor (who never took FMLA leave) who was treated the same as Plaintiff when she failed to

---

[7] In 2008, eight professors in the Accounting and Finance Department taught summer school. Of them, four (including Plaintiff), were assigned one summer school course. None of the other three professors previously took FMLA leave. In 2010, seven professors in the Department of Accounting and Finance taught summer school. Of them, five (including Plaintiff), were assigned one summer school course. None of the other four professors previously took FMLA leave. In 2011, nine professors in the Department taught summer school. Of them, six (including Plaintiff) were assigned one summer school course. None of the other five professors previously took FMLA leave The two professors who were consistently assigned two courses taught classes that Plaintiff did not previously teach and was not qualified to teach. (Facts ¶¶ 31-32, 61, 65-66, 68-69.) Although he requested two courses in Summer 2011, Dr. Simyar was not assigned any. (Facts ¶ 77.)

6

timely submit a request to teach summer school. Linnae Bryant, a professor in the Department of Accounting and Finance, submitted her request two days late (in contrast to Plaintiff's seven day late submittal) and was also denied summer school. (Facts ¶ 60.) Finally, CSU identified other professors, who were not appointed as Chairperson of their respective departments despite receiving the most votes from the faculty in members their departments. Neither of these professors previously took FMLA leave. (Facts ¶ 76.) Because Plaintiff cannot identify similarly situated individuals who were treated more favorably, his FMLA retaliation claim fails.

### III. Plaintiff Cannot Establish a Prima Facie Case of Section 1981 Retaliation.

In his § 1918 claim against Drs. Tolia and Simyar, Plaintiff alleges that they retaliated against him with the *same* retaliatory actions outlined in his FMLA claim. Plaintiff claims they did so because he filed a charge of discrimination with the EEOC in 2007, named them in a 2007 lawsuit, and filed charges of discrimination with the EEOC in 2009 and 2010. (Compl. ¶ 25.)

#### A. Plaintiff's § 1981 Retaliation Claim Fails Under the Direct Method.[8]

Plaintiff's retaliation claim against Drs. Tolia and Simyar fails because: 1) many of the alleged retaliatory actions were not adverse employment actions and, 2) even if they were, he cannot demonstrate a causal connection between these actions and Drs. Simyar and Tolia.

Master Course Outlines: Even if Plaintiff can establish that his temporary assignment constituted an adverse employment action (which he cannot), he cannot connect this assignment to Drs. Simyar and Tolia because the evidence is clear that Drs. Tolia and Simyar did not develop, implement or assign it. In fact, Dr. Simyar stated if it were up to him, he would not have given this assignment to Plaintiff. Dr. Tolia, who barely remembered that Plaintiff was given this assignment, stated that he played *no* role in the development, approval or administration of

---

[8] Retaliation claims brought under the FMLA and Section 1981 are analyzed the same way. *Leonard v. Uhlich Children's Advantage Network*, 481 F.Supp.2d 931, 940 (N.D. Ill. 2007)

7

the assignment. (Facts ¶¶ 41-43.) Because they did not create the assignment, and Plaintiff offers *no* evidence that either influenced the decision, Plaintiff cannot demonstrate that they retaliated against him with respect to the assignment. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 628 (7th Cir. 2007) (if alleged retaliatory actor not directly involved in the decision, Plaintiff must offer evidence that alleged retaliatory actor influenced decision through illicit motives.)

2008 Summer School Assignment: Again, even if Plaintiff can establish that receiving one class was an adverse action, he cannot establish the necessary connection between Drs. Simyar and Tolia and his Summer 2008 assignment because neither was responsible for assigning summer school in 2008 - Roper was. Nor is there any evidence that Drs. Simyar and Tolia influenced the decision in any way. Therefore, Plaintiff cannot demonstrate that they retaliated against him through this assignment. *See Dorsey*, 507 F.3d at 628.

Appointment to the Chair Position: Plaintiff cannot establish that Drs. Tolia and Simyar did not appoint him to the Chair position *because* he named them in a lawsuit. The record evidence is clear that Plaintiff was not offered the position of Chairperson of the Department because he did not have a PhD, and that President Daniels, the decision maker in the matter, strongly encouraged the appointment of only individuals with PhDs as Department Chairs. (Facts ¶¶ 52-53.) Because Drs. Tolia and Simyar were not the ultimate decision makers (in fact, Tolia played no role in the decision), and did not have "singular influence" over the decision, Plaintiff cannot establish the necessary causal connection required for a retaliation claim. *Martino v. MCI Comm. Srvs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009).[9]

2008-2011 Summer School: Again, even if Plaintiff can establish that receiving one class was an adverse action, he cannot establish the necessary connection between Drs. Simyar and

---

[9] Evidence of discriminatory animus by a non-decision maker is not relevant unless the non-decision maker had a singular-influence over the decision maker sufficient to support a cat's paw theory.

Tolia and his summer school assignments because neither was responsible for assigning summer school in 2008-2011 - Roper was. After September 2007, Dr. Tolia was no longer the Department Chairperson. (Facts¶¶ 4, 16-17.) Drs. Tolia and Simyar's lack of involvement in any of these decisions is fatal to Plaintiff's retaliation claim. *Dorsey,* 507 F.3d at 628.

### B. Plaintiff's § 1981 Retaliation Claim Fails Under the Indirect Method

Plaintiff's retaliation claim against Drs. Simyar and Tolia also fails under the indirect method because several of the actions he cites as acts of retaliation do not constitute adverse employment actions. *See* Sections II(B)(1) and III(A) *supra*. Even if they did, his claim still fails because he does not identify *any* similarly situated employees who did not complain of discrimination and were treated more favorably by Drs. Simyar and Tolia.

First, Plaintiff cannot identify *any* similarly situated employees who went on leave for over half of the semester and returned to the classroom to teach their previously assigned courses - *let alone* connect Drs. Tolia and Simyar to any such action. He cannot do this because Drs. Tolia and Simyar had nothing to do with the assignment given to Plaintiff upon return from leave. In fact, Dr. Simyar went as far as to say that he would not have given this assignment. (Facts ¶ 43.) In contrast, CSU points to at least three employees who never complained of discrimination and were given comparable, non-classroom assignments upon return from leave.

Nor can Plaintiff establish that Drs. Tolia and Simyar did not appoint him to the Chair position *because* he named them in a lawsuit. The record evidence is clear that Plaintiff was not offered the position of Chairperson of the Department because he did not have a PhD, and that President Daniels - the decision maker in the matter - encouraged the appointment of only individuals with PhDs as Department Chairs. (Facts ¶¶ 52-53) Because Drs. Tolia and Simyar were not the decision makers (Tolia played *no* role in the decision), Plaintiff cannot establish the

9

necessary causal connection required for a retaliation claim. In contrast, CSU identified other professors who never complained of discrimination and were not appointed to the Chairperson positions after receiving the most votes from faculty in their respective departments.

Finally, Plaintiff cannot identify any similarly situated individuals who were treated more favorably by Drs. Simyar and Tolia with respect to summer school assignments during the years 2008-2011 because neither individual assigned summer school courses during this period. (Facts ¶¶ 4,6.) In contrast, CSU identified similarly situated individuals who did not file a lawsuit against Drs. Simyar and Tolia, or otherwise complain of discrimination, who were also assigned one (or zero) summer school class during the same years, among them Dr. Simyar. (Facts ¶¶ 31, 61, 65,68, 75.) Because Plaintiff cannot establish the necessary causal connection with respect to any of the above actions, his retaliation claims against Drs. Simyar and Tolia fail.

## IV.     Plaintiff's Title VII Claim Fails Because He Did Not Suffer Discrimination.

In Count III Plaintiff claims that CSU discriminated against him based on his race (African American) and gender (male) by discriminatorily assigning summer school courses to professors who were not African American or male, instead of assigning them to Plaintiff. (Comp. ¶ 30.) To succeed, Plaintiff must prove that he was the victim of intentional discrimination. *Contreas v. Suncast Corp*., 237 F.3d 756, 760 (7th Cir. 2001). Plaintiff apparently seeks to do so using the indirect, burden shifting-method first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10] To survive summary judgment under the indirect method, Plaintiff must show: (1) he is in a protected class; (2) he met his employer's legitimate expectations; (3) despite his performance he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside of the

---

[10] Plaintiff can also proceed by the direct evidence method but presents no direct evidence of discrimination on the basis of race and gender.

protected class more favorably. *Id*. Failure to satisfy every element of this *prima facie* case is fatal for a plaintiff. *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002).

### 1. Adverse Employment Actions

For the reasons stated in sections II(B)(1) and III(A) *supra*, Plaintiff did not suffer adverse employment actions when he was assigned one summer school class instead of two during 2008, 2010 and 2011.

### 2. No Similarly Situated Employees Were Treated More Favorably

Even if Plaintiff can establish that he suffered an adverse employment action with respect to his summer school assignments during the years 2008-2011, his Title VII discrimination claim fails because he cannot demonstrate that non-African American or female employees were treated more favorably. *See Weber v. Univ. Research Ass'n*, 621 F.3d 589 (7th Cir. 2010) (male employee who could not identify similarly situated female employees who were treated more favorably could not establish a *prima facie* case of sex discrimination).

Perhaps Plaintiff cannot demonstrate that non-African Americans professors were treated more favorably because during 2008-2011 nearly all (7 out of 8 and 9) of the Accounting and Finance Department professors who taught summer school were African American. (Facts ¶¶ 31, 61, 65, 68.) In addition, the Chairs of the Accounting and Finance Department – the individuals responsible for assigning summer school courses - during this period were *all* African American. (Facts ¶¶ 40, 64.) In fact, for the vast majority of this period, Atha Hunt (African American/male) was the decision maker. From 2008-2011, with the exception of Professor Chang Choi (Asian/Male), all Accounting and Finance Professors who were assigned two summer school courses were African American. Moreover, the only Accounting and Finance professors who were consistently assigned two summer school courses were Professor

11

Choi (who taught finance courses) and Professor Hunt (who taught courses relating to the law and federal income tax). These classes were offered based on student interest and demand. Plaintiff never taught either of these classes and was not qualified to do so. (Facts ¶¶ 66, 69.)

In addition, only two female professors were assigned more than one summer school course during this period (Grange and Roper each assigned two courses two times). In contrast, at least two male professors in Plaintiff's department taught two summer school classes *every* year in question. (Facts ¶¶ 31, 61, 65, 68.) Plaintiff also failed to identify *any* females who were assigned summer school courses despite missing the deadline to submit their requests. In contrast, CSU identified a similarly situated female – Linnae Bryant - who missed the deadline and was also denied summer school courses. Because Plaintiff cannot point to *any* similarly situated white females who were treated more favorably, he cannot establish a *prima facie* case of race or gender discrimination. *See Weber,* 621 F.3d at 589.

## VI. Plaintiff's ADA Discrimination Claim Fails

Plaintiff's ADA claim fails because he cannot demonstrate that he is a "qualified individual with a disability." *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009) ("The ADA prohibits employers from discriminating 'against a qualified individual with a disability because of [his] disability.'"); 42 U.S.C. § 12112(a). Plaintiff has the burden of proving that he was a qualified individual with a disability. *See Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 198 (2002). As an initial matter, Plaintiff fails to identify his alleged disability *anywhere* in his Third Revised Complaint. Nor does he claim to be a qualified individual with a disability. Absent an allegation of a disability, Carter's ADA claim fails.[11]

## V. Plaintiff Cannot Establish a Prima Facie Case of Title VII or ADA Retaliation[12][13]

---

[11] To the extent that Carter's alleged disability is sleep apnea, which he discussed during discovery, sleep apnea is not a recognized disability under the ADA. *See Carter v. Chicago State Univ., Tolia and Simyar*, No. 7-cv-4930, 2011 WL 3796886, at *5 (N.D.Ill. Aug, 24, 2011.)

[12] In his Title VII retaliation claim Plaintiff altogether fails to identify his alleged protected activity, which

12

Plaintiff's Title VII and ADA retaliation claims are analyzed under the same method. Both claims fail under both the direct and indirect methods of proving retaliation.

### A. Title VII and ADA Retaliation Claims Fail Under the Direct Method.

Plaintiff's claims fail under the direct method because: 1) his summer school assignments did not constituted adverse employment actions (see Sections II(B)(1) and III(A) *supra*), and 2) even if they did, he cannot demonstrate the required causal connection between these assignments and his complaints of race, gender and disability discrimination. In fact, Plaintiff presents *no* evidence that Roper or Coupet – the decision makers with respect to summer school courses in 2008-2011– even knew about his charges of discrimination or his lawsuit. As a result, he cannot establish retaliation. *See Drosena*, 560 F.Supp.2d at 670. Plaintiff presents no other evidence of causation besides the fact that one event occurred before another, which is not sufficient to survive summary judgment on a retaliation claim. *See Bilow*, 277 F.3d at 895.

### B. Title VII and ADA Retaliation Claims Also Fails Under the Indirect Method

Plaintiff's retaliation claim also fails under the indirect method because several of the actions he cites as acts of retaliation do not constitute adverse employment actions. *See* Sections II(B)(1) and III(A) *supra*. Even if they did, his claim is unsuccessful because he does not identify similarly situated employees who did not complain of discrimination and were treated more favorably with respect to summer school assignment.

In contrast, CSU identified similarly situated individuals who did not complain of discrimination and were also assigned one (or zero) summer courses during the same years.

---

is fatal to his retaliation claim. Assuming solely for purposes of this Motion that he indented to plead that he was retaliated against for filing charges of discrimination and a lawsuit alleging discrimination (the protected activity identified in his ADA claim), his claim will be analyzed as such.
[13]*Leonard v. Uhlich Children's Advantage Network*, 481 F.Supp.2d 931, 940 (N.D. Ill. 2007 (Tile VII retaliation claims analyzed the same way as FMLA and ADA retaliation claims).

(Facts ¶ 31, 61, 65, 68, 75.) In fact, the only two individuals consistently assigned two summer school courses taught courses Plaintiff was not qualified to teach. Because Plaintiff cannot establish a causal connection between his summer school assignments and his complaints of disability, gender and race and disability discrimination, his retaliation claims fail.

VII.     **Plaintiff Cannot Establish Pretext with Respect to <u>Any</u> of His Claims**

Notwithstanding Plaintiff's inability to establish each element of his *prima facie* case in Counts I, II and III, the Court should grant summary judgment in Defendants' favor because Plaintiff cannot rebut the legitimate, non-discriminatory reasons for the actions about which he complains, and he cannot prove that Defendants' reasons are pretext.[14]  Pretext in discrimination law means "more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Faas v. Sears, Roebuck & Co.,* 523 F.3d 633, 642 (7th Cir. 2008.)[15] Defendants have put forth legitimate, non-discriminatory reasons for each action about which Plaintiff complains.  Plaintiff cannot demonstrate these reasons are lies or phony reasons offered to disguise discriminatory animus.  Each is discussed in turn.

<u>Master Course Outlines</u>:  The evidence is clear that Plaintiff was given this assignment so as not to disrupt the learning process of the students, which is CSU's primary concern.  Roper and Jefferson made this decision based on their concern for the students' best interest and their belief that switching professors with only four weeks left in the semester was not beneficial to students.  (Facts ¶¶ 40-41)  Plaintiff may not agree with the decision, but he has *no* evidence that

---

[14] Pretext is analyzed the same way under all of Plaintiff's claims. *See Keeton v. Morningstar, Inc.,* 667 F.3d 877 (7th Cir. 201)*Dyrek v. Garvey*, 334 F.3d 590 (7th Cir. 2003);*Simpson v. Office of Chief Judge*, 520 F.Supp.2d  998 (N.D. Ill. 2007).  As a result, the analysis is combined.

[15] Moreover, mere speculation that the employer acted with discriminatory intent does not meet a plaintiff's burden in defeating summary judgment motion. *Uhl v. Zalk Fabricators, Inc.*, 121 F.3d 1133, 1137 (7th Cir. 1997) (citations omitted).  Moreover, it is well established that the court is not a "'super personnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices." *Blise v. Antaramian,* 409 F.3d 861, 867 (7th Cir. 2005).

Roper and Jefferson's stated belief is a lie or a phony reason – particularly because other professors who returned from non-FMLA were also given non-teaching assignments for the remainder of the semester. (Facts ¶ 44.) Moreover, the relevant inquiry is not whether the decision was wise or correct, but whether it was free from discrimination.

2008-2011 Summer School Assignments: CSU assigns summer school courses based on program needs and student demand. The determination as to which classes will be offered and who will teach them is an in-depth process. (Facts ¶¶ 11,16.) Plaintiff has no evidence that the Summer School Committee, Professor Roper, and Ernest Coupet (the individuals in charge of assigning courses) provided spurious reasons for offering him one course instead of two during the years 2008, 2010 and 2011. Nor can he demonstrate that the real reason for the assignments was a discriminatory animus – particularly when there is *no* evidence that any of them even knew of Plaintiff's protected activity. *See Drosena*, 560 F.Supp.2d at 670. Demonstrating a discriminatory animus would also be particularly hard because the majority of professors in Plaintiff's department were also assigned one summer school course during the same years. Some, like Dr. Simyar, were not assigned any courses despite requesting two. (Facts Finally, Plaintiff cannot establish that the reason he was not assigned a summer school course in 2009 – he missed the submission deadline – is a lie because another professor (who did not engaged in protected activity) was denied summer school on the same basis.

Chairperson Position: Nor can Plaintiff demonstrate that the reason he was not selected as Chairperson of the Department – because he did not have a PhD - is a lie. The record is clear that the decision maker on the matter, President Daniels, strongly encouraged the appointment of only individuals with PhDs. In fact, at the time of the election, thirty-two of the thirty-five CSU Departments Chairpersons had PhDs and the individual Daniels selected had a PhD. Although

15

two professors without PhDs have been appointed Chairpersons in Plaintiff's Department since 2008, one (Professor Hunt) was appointed *after* President Daniels resigned, and the other (Professor Roper) was only appointed on a temporary/interim basis after returning from leave. Plaintiff may not agree with President Daniel's decision, but he cannot demonstrate that it was pretext for discrimination, particularly when there is no evidence that she even knew of Plaintiff's protected activity when making the decision.

VIII. **Conclusion**

For the foregoing reasons, Defendants respectfully move the Court to grant summary judgment in their favor on all counts.

LISA MADIGAN  
Illinois Attorney General

Respectfully submitted,

By: /s/ Katherine Christy  
KATHERINE CHRISTY  
Assistant Attorneys General  
100 West Randolph Street, 13th Floor  
Chicago, Illinois 60601  
(312) 814-2035